CHARLES P. NOELL and LOUISE NOELL, Appellants, v. WILLIAM REMMERT and OLIVIA K. REMMERT.—30 S. W. (2d) 1009.

Division One, September 4, 1930.

*Charles P. Noell* and *Hensley, Allen & Marsalek* for appellants.

150

*Taylor R. Young* and *Abbott, Fauntleroy, Cullen & Edwards* for respondents.

LINDSAY, C.—The plaintiffs in this suit are husband and wife and the defendants are husband and wife. The plaintiffs, owners of lot 14 and a residence thereon, a part of a certain subdivision within the city of Clayton in St. Louis County, designated as Country Club Court, brought this suit asking that defendants, their agents, associates and grantees be permanently enjoined from erecting, building, maintaining or using any apartments or flats in a subdivision known as Country Club Court Addition, which adjoins said Country Club Court.

The petition alleges purchase by defendant William Remmert, from the Davis estate, about June, 1924, of a certain tract of land in St. Louis County, containing a little more than twelve acres. This tract includes Country Club Court, which was first platted and improved, and covers also Country Club Court Addition, platted later. Country Club Court covers the south portion of the tract, and Country Club Court Addition, the north and northwest portion of the tract. The plaintiffs allege that shortly after the purchase of the tract of land from the Davis estate, defendant William Remmert, acting for himself and his wife, undertook to improve the same and set it out as a high-class residential subdivision, exclusively for homes of one family only, and on which there were to be no apartments or flats; that pursuant to said scheme, defendants caused the plat of the southern portion of the tract to be recorded, designating the same as Country Club Court, and dividing Country Club Court into building lots; that pursuant to said general scheme of creating a high-class residential subdivision, defendant William Remmert advertised in the newspapers of St. Louis, and held out to the public, that Country Club Court was to be a high-class residential subdivision, and restricted to homes of one family only, and that no flats or apartments were permitted therein; that thereafter in the spring

of 1925, he planned a high-class residential subdivision in the northern portion of the said tract which he named Country Club Court Addition, exclusively for homes of one family only, and in which there were to be no flats or apartments, and pursuant thereto filed a plat dividing the northern portion of the tract into lots, and that thereafter he advertised in the newspapers of the city of St. Louis and held out to the public generally that he had created a high-class residential subdivision, restricted to one family only, and in which there was not to be permitted the erection of apartments or flats. Plaintiffs next allege that about September, 1925, having read said advertisements as to the character of restrictions upon Country Club Court and Country Club Court Addition, they called upon the defendant William Remmert, and were told by him and his assistant that Country Club Court and Country Club Court Addition were restricted of record to high-class residences, for one family only, and that no apartments or flats could be erected under the restrictions of record in either of said subdivisions; that plaintiffs relied on and believed said statements, and were without knowledge of the falsity thereof, and told defendant William Remmert, at the time. that they were desirous of securing a home in a district not congested, and away from flats and apartments. Plaintiffs further allege that the deed from the Davis estate to William Remmert, as of record, contained no restrictions against apartments or flats as said Remmert and his assistant fully knew, and that they knew their statements concerning the same were false and fraudulent, and that such statements were made with the purpose of defrauding the plaintiffs, and made to induce plaintiffs to purchase one of said lots and secure from them a contract to build a home thereon. Plaintiffs next allege that believing the said advertisements and the oral statements of defendant William Remmert and his assistant to be true, they did, about September, 1925, enter into a contract to purchase of defendant lot 14 in said Country Club Court, and entered into a contract with said Remmert to build thereon, for them, a high-class residence for the sum of $31,500; that defendant did erect said residence and delivered to plaintiff a general warranty deed to said lot about November 16, 1925, and later plaintiffs moved into their said residence with their children. Plaintiffs further allege that to the north and in the rear of their home, defendant made a narrow alley or driveway which is about twenty-five feet north of their said residence; that at and before the time of purchase of said lot, defendant informed the plaintiffs that said alley or driveway would be private, and there would not be much automobile traffic.

It is further alleged that defendants, in violation of their statements to plaintiffs that the restrictions of record prevented the erection of apartments and flats, and on or about April, 1928, began

the erection of two flats or apartment buildings on the northeast part of Country Club Court Addition, then nearing completion; that about May, 1928, the defendants, also in violation of their aforesaid statements, began the excavation for two more apartments or flats in the southeast portion of Country Club Court Addition, and that defendant William Remmert asserted his right to and threatened to erect a string of apartments or flats along the said narrow alley or driveway just north of plaintiffs' residence, and to erect garages facing on said alley or driveway in the rear of said apartments or flats. Plaintiffs further allege that, by reason of the fraudulent statements as to the restrictions against such apartments and flats made with intent to defraud and cheat plaintiffs, they were induced to purchase the lot and erect the house and occupy the same, and that except for such false statements and representations and advertisements which they fully relied upon, they would not have purchased said lot, nor erected an expensive home thereon, and if they had known as a matter of fact or of record, that Country Club Court and Country Club Court Addition were not restricted as high-class subdivisions for homes for one family only, and in which flats and apartments were forever barred, they would not have purchased said lot or built their home thereon. The plaintiffs further pleaded that by reason of such false and fraudulent statements and advertisements defendants are estopped from asserting or claiming the defense that plaintiffs had constructive notice of the non-existence of any such restrictions; and that defendants are estopped from claiming or asserting they have a legal right to erect apartments or flats in Country Club Court or Country Club Court Addition, and estopped from asserting any other legal remedy or remedies against the plaintiffs' cause of action.

The answer was a general denial. Upon the trial the court found for defendants, and the plaintiffs appealed.

There are eighteen lots in Country Club Court, and they are so laid off that, taken as a whole, they lie somewhat in the form of an elongated horse-shoe. On the outer side is a driveway; on the inner side of the horse-shoe is a parkway, and in the center a grass plot. The residences front toward the inner side. Hanley Road extends north and south along the east, or open, end of the court. The plaintiff testified that in the spring and summer of 1925, he saw in the St. Louis newspapers advertisements of Country Club Court. He put in evidence photostatic copies of six of these advertisements, each one of them containing a picture showing a group of three or four residences. Below, in large print, is the following: "Country Club Court—A District of Homes of Superior Quality—No Apartments—No Flats." The printed matter below the foregoing was to the effect that the court would be improved with residences,—no

154

apartments, no flats. The reference in these advertisements to the buildings was that they were or were to be "homes." Two of them—one published under date of April 8, 1925, and the other under date of April 12, 1925—had the statement that a number of the "homes" were already occupied, others completed, and some in the course of construction. There is in the two mentioned, the following statement: "Forty more houses will be built on ground adjacent to Country Club Court." The advertisements contain no mention of Country Club Court Addition. The plaintiff testified that in September, 1925, they went to see defendant Remmert, and found him at a partly constructed residence in Country Club Court, where he was maintaining his office; that at that time Country Club Court was almost built up, but there was no house on lot 14 of Country Club Court. Plaintiffs examined the house then under construction on one of the lots, and decided it was not large enough for their needs, they having several children. They said defendant proposed that he build plaintiffs a house on one of the remaining lots in Country Club Court. Plaintiff Charles P. Noell testified that he called Remmert's attention to the fact that he had advertised "no apartments or flats," and asked what protection they would have as to improvements on the ground immediately north of lot 14, and plaintiff testified this property immediately north, to which he referred, was the property now called Country Club Court Addition; but that Country Club Court Addition had not been platted at that time, nor the ground improved in any way. Plaintiffs testified that defendant Remmert said that the property inquired about, that is, the property north of lot 14, was restricted to high-class residences; that he, defendant, owned both pieces of ground, having bought it in one body from the Davis estate, and that the property lying to the north was restricted of record against the building of apartments and flats. Plaintiffs testified that they explained to defendant Remmert that they had small children; that they wanted to get away from where they lived, because it was an apartment district, and that defendant replied: "That will never happen here. This property is restricted of record against the building of apartments and flats." Plaintiffs testified that they relied entirely upon that statement of defendant, and plaintiff Charles P. Noell testified that Remmert said to him in substance, that if he had any doubt about the matter he could go to the records and look it up for himself. The evidence was that this was the first time plaintiffs and Remmert had met, and they met as strangers. Plaintiff Charles P. Noell is a lawyer, and had been a practitioner for several years. On September 30, 1925, the plaintiffs entered into a contract in writing, with defendant Remmert, for the purchase of lot 14 and the erection of a residence on lot 14 in Country Club Court, for the price of

$31,500. The contract recites: ''Said property is sold to restrictions recorded.'' Plaintiffs said they relied upon the representations of defendant Remmert, and did not investigate the records to ascertain whether the property lying to the north of the property purchased by plaintiffs, was restricted against flats and apartments. The warranty deed from defendant to plaintiffs was executed on November 16, 1925. The deed recited that the property was conveyed ''subject to all easements and restrictions of record.'' There were easements to the various public service companies. The home on the lot was completed early in 1926, and plaintiffs moved into it and have since occupied it. The plaintiffs in their testimony said that a Mrs. Husband, who was associated with Mr. Remmert, and was his assistant in handling the property, was present at the time they were looking at the property, and made statements similar to those made by Remmert. Some time in 1926, defendant having platted Country Club Court Addition, began to improve that subdivision. In 1926 and 1927, he built a number of fine residences in Country Club Court Addition. The evidence is that at the time the plaintiffs bought their lot in Country Club Court, there were no restrictions of record upon any part of the Davis tract, except restrictions against the sale of intoxicating liquors. After Country Club Court had been fully built up, the property owners therein, including the plaintiffs and including also defendant Remmert, got together, under date of May 7, 1926, and provided in writing for three of their number to act as trustees, and agreed upon restrictions to be placed upon the use of the property in Country Club Court. These restrictions, in substance, confined the property to use as single homes, and forbade flats or apartments, and possession of any of the property by negroes. The restrictions were to be in force thirty years. The plaintiffs testified that about March or April, 1928, Remmert began to put up apartments on that part of the tract north of Country Club Court. Plaintiffs said the first apartments were about 500 or 600 feet away, in the northeast corner of Country Club Court Addition; that thereafter, defendant Remmert began the building of eight four-family apartments in the block immediately north of Country Club Court, and that he protested to him, and finding it of no avail brought the suit. He testified that the building of these apartments had depreciated the value of his property about $15,000.

The buildings complained of are two stories in height, and constitute four-family flats.

The plaintiffs, over the objection of defendant, introduced some testimony to the effect that Remmert and his assistant told other persons who purchased lots in the Country Club Court, that the property in the Court and north of it, was restricted to residences. Defendant Remmert denied that he told plaintiff the property north

of Country Club Court was restricted, except restrictions as to the sale of intoxicating liquors. Remmert testified that at the second time plaintiff came out to look at the property, and at a time when they were looking toward the east—that is, toward Hanley Road, and the property to the east of Hanley Road—plaintiff Charles P. Noell asked if they would not be liable to build a lot of one-story buildings on that property, and defendant told him "no," that the property beyond the Hanley Road was restricted to two-story buildings; and defendant said Mrs. Husband was present and that she gave to plaintiff details as to the restrictions of record on that property. Mrs. Husband also testified to this conversation. Defendant testified that he told plaintiffs there was only one restriction on property in the Country Club Court, the restriction against the sale of liquor; and, that he told plaintiff the plan was that when the Court was built up, a meeting of the property owners could be called, and they could put on such restrictions as they saw fit, and that plaintiff said that was very satisfactory to him. He testified that plaintiff asked about the property on the north or west of the Country Club Court property; that he told plaintiffs he owned that property, and that the only restriction on that property was that against the sale or manufacture of liquor; and that if he, defendant, was going to sell the property, he would restrict it in a manner similar to the property east of Hanley Road, so as to allow no business houses to be built on the property, but restrict the same to four-family apartments.

Defendant introduced a large number of witnesses, about fourteen in number, many of them owning property in Country Club Court, who testified that in their opinion the erection of the apartments, such as were being erected by defendant, did not affect the desirability or depreciate the value of the property in Country Club Court, but rather enhanced its value. Some of these witnesses, over the objection of plaintiffs, testified that Remmert did not represent to them that the property in Country Club Court Addition was restricted. Defendant Remmert testified that about March 18, 1926, he told plaintiff Charles P. Noell that he was going to build apartments on the ground north of Country Club Court; that he expected to build twelve apartments; that Noell asked the kind of apartments he expected to build, and he replied that they would be four-family residences; that plaintiff said he was glad they were to be built, that he "would rather see them than some great big apartments—eighteen or twenty-family apartments like they build them now." Defendant testified that he began building the apartments or four-family residences, a few days after the foregoing conversation was had. He testified that at the time he told Charles P. Noell he expected to build such apartments, the only remark made by

Noell was: "I hope they won't have a back stairway and have a lot of milk bottles on the back stairway," and defendant said: "I told him there would be no outside stairway on the building at all, that we were building four-family residences, and the stairways would all be enclosed." He testified that at the time plaintiff protested against the building of the apartments he had already expended $50,000 in their construction, and that at the time of the trial, the amount invested in the apartments built was close to $300,000, and that if they were required to be torn down and replaced by one-family homes, it would entail a loss of $250,000.

Dr. A. W. Erickson, a dentist, who lived in one of the apartments in Country Club Court Addition at the time of the trial, and formerly had owned and occupied a residence in Country Club Court, was called by the defendants. He testified that plaintiff Charles P. Noell called him over the telephone at the time Noell was protesting against the erection of the apartments and wanted witness to attend a meeting of the property owners; that plaintiff said "if they could get together they could stop the thing," and that Noell spoke of making up a fund and said: "Let us bluff Mr. Remmert if we can, just like they did over in Moorland," and that Noell further said: "If he don't do it, we will sue him." Witness also testified that plaintiff said something about some "easy money;" that it would "cost Mr. Remmert some money, just like it did the property owners of Moorland," and, that "Remmert could not afford to do it without settling." Plaintiffs did not take the stand in contradiction of the statements of Remmert as to the conversation on March 18th, nor the statements of the witness Erickson.

Briefly stated, the plaintiffs asked the court to decree that the title of defendant to the lots in Country Club Court Addition had been subjected to a negative easement for the benefit of plaintiffs as owners of lot 14 in Country Club Court, and that the defendant be restrained from erecting, maintaining or using his said property for the construction of flats or apartments. Country Club Court Addition covers between ten and twelve acres.

It is uniformly held that on appeal, cases of this character are substantially triable *de novo;* that this court is not bound by the findings of the chancellor, but will examine the evidence and make its own findings of fact and of law, and if necessary enter a judgment appropriate thereto. Otherwise, an appeal in an equity case would be ordinarily of no avail, and "an idle formality." [Blount v. Spratt, 113 Mo. 48; Gottfried v. Bray, 208 Mo. 663; Givens v. Ott, 222 Mo. 395, 410; Cohron v. Polk, 252 Mo. 261, 282.] Nevertheless it has often been said that even in equity cases, this court will defer somewhat to the findings of the chancellor, who could see and hear the witnesses; and this has been said not only in cases where there was a finding for the complaining party, and

relief granted, but also where there was a denial of equitable relief. [Johnson v. Stebbins-Thompson Realty Co., 177 Mo. 581; Huffman v. Huffman, 217 Mo. 182; Pierce v. St. Louis Union Trust Co., 311 Mo. 262.]

In the case at bar the real foundation or essential element of the plaintiffs' case consists of what was said in the conversation between the parties, and there is direct conflict in the testimony upon that point. In saying this we have not lost sight of the advertisements.

Counsel for plaintiffs have cited many cases, some from this and some from other jurisdictions, to the effect that by positive, false and fraudulent representations made by one party, whereby the other in reliance thereon was induced to purchase property, the party making such false representations may be estopped to exercise or assert any right to the use of his property, except in conformity with the representations. Among these are a number of New York cases, where restrictions upon the use of real property were held to have arisen by estoppel, as against the party making the representations. Counsel have also cited cases, some from other jurisdictions and others in the courts of this State, in support of their contention that in view of the representations made by the defendant that the property in question was restricted of record against the erection of flats and apartments, plaintiff may not be denied relief upon the ground that the record title of such property shows no such restrictions, and that plaintiffs thereby had constructive notice thereof. The application of the doctrine under the facts in this case is the important matter.

As we view the instant case the essence of plaintiffs' claim is that defendant not only represented that the property, both Country Club Court and Country Club Court Addition, was restricted of record against apartments or flats, but also that he made that representation in such a way, or accompanied by such other statements and conduct, that plaintiffs were deceived and did not investigate and ascertain the truth for themselves. They have cited a number of cases wherein it was held that an estoppel may arise from mere silence or passive conduct of the one who has knowledge of facts and whose duty is to speak, where such silence or conduct is misleading. Cases of that sort cited are Olden v. Hendrick, 100 Mo. 535; Palmer v. Welch, 171 Mo. App. 580; Clark v. Edgar, 84 Mo. 106; Bailey v. Smock, 61 Mo. 213. The instant case was tried on the theory not of silence on the part of defendant when he ought to have spoken, but that the fraudulent representations were actual and positive, and accompanied with such fraudulent statements and conduct as prevented plaintiffs from ascertaining the truth. They could easily have ascertained the actual situation.

The rule applicable under the facts in this case is stated in an early case, Holland v. Anderson, 38 Mo. 58: ''Fraudulent misrepresentation and concealment by a vendor of land, as to the nature, quality, quantity, situation, and title thereof, affecting the whole subject-matter of the contract, will entitle the vendee to relief in equity, and he will not be left to his remedy at law; but such misrepresentation by the vendor, to furnish a ground for equitable interference, must be in reference to some material thing unknown to the vendee, either from not having examined, or from want of opportunity to be informed, or from special confidence being reposed in the vendor. As when the vendor, as is charged in this case, prevents the vendee from making an examination of the records as regards the title, by assurances that the title is perfectly good, and the property is free from encumbrances, and upon the faith of such assurances and representations the vendee abstains from making the proper examination. But in all such cases the court will not act without the clearest proof of the fraudulent misrepresentations, and that they were made under such circumstances as show that the contract was founded upon them—1 Sto. Eq. Jur. Sec. 200.'' Later cases to the same effect are Bryan v. Hitchcock, 43 Mo. 527; Langdon v. Green, 49 Mo. 363. Another statement of the rule, but to the same effect, is made in Wannell v. Kem, 57 Mo. 492, where the early cases are cited.

In Dunn v. White, 63 Mo. 186, the rule here applicable is stated: ''And if the buyer trusts to representations which are not calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily in his reach, he must suffer the consequences of his own folly and credulity. The vendee must go further and show that some deceit was practiced for the purpose of putting him off his guard, or that special confidence was reposed in the representations of the vendor, and that the contract was made and entered into upon the strength of that confidence; and in such cases it will require clear proof of the fraudulent misrepresentations.''

Again, in Key v. Jennings, 66 Mo. 369, it was said, speaking of misrepresentations and concealments as to title of land and the like, that ''such misrepresentations must be as to some material thing unknown to the vendee, either from not having examined or from want of opportunity to be informed, or from special confidence reposed in the vendor. And in such cases there should be the clearest proof of the fraudulent representations, and that they were made under such circumstances as showed that the contract was founded upon them. In such transactions parties must not neglect to use their own discretion and judgment.'' The rule as announced in these earlier cases has not been departed from. [Bragg v. Packing

& Warehouse Co., 205 Mo. App. 606; Cohron v. Polk, 252 Mo. 261-2.] The evidence in the case at bar is to be considered in the light of the foregoing authorities. According to the testimony of the plaintiff Charles P. Noell, at the time the representations were made, he and the defendant were in Country Club Court subdivision looking at that property, and the property adjoining, later Country Club Court Addition, was within their view. Plaintiff said that at that time the land to the north, which constitutes Country Club Court Addition, was "wild, open, raw and unimproved land." He says that defendant told him he had bought "both pieces of land in one body from the Davis estate." The plaintiff testifies: "I asked him if it was restricted of record against the building of apartments and flats and he said it was." The property in question, the place of their conversation, was distant five or six blocks from the court house; and the real essence of plaintiff's claim is, that he was deceived and prevented from examining the record and knowing the facts, because defendant told him the record was there and he could look for himself. Plaintiff on cross-examination said he never asked how long the restrictions ran, nor who placed them there; although this was the first time he and the defendant had ever met, his position is that he accepted finally this statement about the raw, unimproved land. They agreed upon the terms of the contract a few days after this first meeting. A contract in writing was signed between them. Plaintiff, on cross-examination, says, that in signing this contract of purchase he "never gave restrictions a thought." He paid down $2,000 upon the property and was to execute his notes in the total sum of $29,500, to be secured by deed of trust upon the property. The contract provided that the title to said property was to be perfect and to be conveyed by warranty deed, and as the contract is shown in this abstract, it contains the provision: "Said property is sold to restrictions recorded." It provided that if upon examination of the title it be found to be imperfect, and could not be perfected within a reasonable time, the purchaser was to be paid the reasonable cost of examining the title and his earnest money refunded. A certificate of title was furnished under date of November 24, 1925, by a land title insurance company. This certificate recites the existence of easements to various public utility companies, but says nothing about restrictions upon the property. Plaintiff's testimony is to the effect that he did not get this certificate of title, but supposed it went to the mortgagee. The warranty deed to plaintiffs was executed November 16, 1925. Following the description of the property is the provision: "Subject to all easements and restrictions of record."

On behalf of plaintiffs it is argued that plaintiffs bought a lot in Country Club Court; that the certificate of title was a certificate of

title to that lot only; that the representations of defendant had reference to the condition of the title to the property in Country Club Court Addition, and that the plaintiffs never saw any certificate of title to property in Country Club Court Addition. We do not regard this as of much force, however, in view of the testimony of plaintiff above referred to that he was told the whole tract had been bought by defendant from the Davis estate and the whole tract was subject to restrictions of record. In determining whether an estoppel should be declared in this case, and in doing so, considering the vital question of whether plaintiff Charles P. Noell by the fraud of defendant was prevented from making any examination, and ascertaining the truth, we must consider all of the facts and circumstances shown. There is the testimony of defendant and of Mrs. Husband that it was restrictions upon the property east of Hanley Road, which plaintiff was told he could see by looking at the record. There is the fact that the parties were strangers to each other; that manifestly the defendant was anxious to make a sale. There is the circumstance that lot owners in Country Club Court were left to make their own restrictions upon that property and that plaintiffs, with defendant and all other lot owners, did make their own restrictions in writing, upon that property. We refer to Bryan v. Hitchcock, 43 Mo. 527, a case heretofore cited, and which was a suit to rescind a contract, and which this court, at page 531, said belonged "to that class of cases where, as Judge Story says, the court will not rescind the contract of the parties 'without the clearest proof of fraudulent misrepresentations, and that they were made under such circumstances as show that the contract was founded upon them.'" Continuing, this court said: "Nor will courts of equity aid parties who neglect the use of their own judgment and discretion in their business transactions. It is not sufficient that Hitchcock's representations should have been inaccurate and misleading, or even willfully false. The plaintiff must have rested the transaction upon the faith of them. Now, these parties were strangers until these negotiations were initiated, and they were concluded in the course of a few days. It is a little remarkable that Mr. Ryan should have consummated the arrangement with the defendant, and conveyed away his property, relying upon nothing but the interested statements and representations of one respecting whom he knew so little, and especially when other means of information were so open and accessible to him. There is an antecedent improbability that he would act so inconsiderately." The foregoing statement seems not inappropriate under the circumstances shown in evidence in the case at bar.

We have heretofore referred to the advertisements published in the newspapers in the city of St. Louis. Counsel for plaintiffs refer to them as cumulative evidence of defendant's fraud, but we do not

regard them as tending in any material way to strengthen the plaintiffs' case, or as overcoming the conclusion we have reached. These advertisements refer to Country Club Court, and the statement in two of them that "forty more houses will be built on ground adjacent to Country Club Court" cannot be construed to be a representation or a promise that all those "houses" will be one-family residences.

In Bolin v. Investment Co., 273 Mo. l. c. 264, a case involving the construction of certain written restrictions, this court adopted as appropriate the definition of the word "house," as a structure given in the International Dictionary as follows: "A structure intended or used for human habitation; esp., a human habitation which is fixed in place and is intended for the private occupation of a family or families."

There is in the brief some discussion of the applicability of the Statute of Frauds. As has been said the answer was a general denial. When the first advertisement was offered by the defendant, among other objections made there was raised the question of its admissibility under the statute; and later the same objection was made against the admission of the other advertisements offered. Defendant also objected to the testimony as to the oral statements made by the defendant. The evidence was all admitted. On that score plaintiffs have no ground to object now, and under the conclusions we have reached defendant's reference to the Statute of Frauds need not be discussed. After the entry of judgment in favor of defendant, defendant filed his motion for an order cancelling the notice of lis pendens filed by plaintiffs at the time the suit was brought; and the court sustained that motion. There was a showing that some of the lots had been sold by defendant and improved by others, and that there were mortgages thereon. The appeal taken, covered that order as well as the judgment. Under the conclusion we have reached it is not necessary to discuss the action of the court in cancelling the notice of lis pendens.

The plaintiffs by their case sought by an estoppel in pais to establish restrictions upon the use of property owned by defendant. The relief sought is drastic and sweeping in character. In such a case, the evidence of the alleged grounds for relief must be clear and convincing. "Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegation or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel." [21 C. J. 1139; Sutton v. Dameron,

100 Mo. l. c. 150, 151.] Under all the facts in this record we cannot convict the trial court of error in denying the relief asked by plaintiff, and the judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by our late Commissioner, the Hon. James D. Lindsay, is adopted as the decision of the court. All of the judges concur.