WILLIAM PIKE, Appellant v. SARAH MENZ, JOE MENZ, THOMAS DUNNING, HERMAN HUTSON, MELBA HUTSON, LOUIS HUTSON, BETTY HUTSON, LEVI K. HUTSON. BEATRICE WALKER, BOYD HUTSON, DELLA MAY HUTSON, MARGARET HUTSON, GLADYS HUTSON, JANE HUTSON, FRANK HUTSON (known also as FRANK MILLER, ALLEN HUTSON, and ANNA RUTH HUTSON, Defendants, SARAH MENZ, Appellant.—No. 40932.—218 S. W. (2d) 575.

Division One, March 14, 1949.

*J. Grant Frye* and *Gerald B. Rowan* for appellant William Pike.

*Limbaugh & Limbaugh,* and *Benson C. Hardesty* for appellant
Sarah Menz.

[576] BRADLEY, C.—Action to determine title to certain described lots in the town of Delta, Cape Girardeau County. Plaintiff claims to be the sole owner, and so does defendant Sarah Menz. The trial court did not agree with either of these claims and plaintiff and defendant Sarah Menz appealed.

Defendant Thomas Dunning, surviving husband of Maggie Elizabeth Dunning, deceased, is the common source of title; defendant Joe. Menz is the husband of appellant Sarah Menz; other defendants are the children of Essie Hutson, deceased mother of plaintiff Pike, and are his half brothers and sisters. Maggie Elizabeth Dunning was Pike's grandmother, and the mother of appellant Sarah Menz, who is Pike's aunt.

Hereinafter we refer to Maggie Elizabeth Dunning as Mrs. Dunning, to appellant Pike as Pike, and to appellant Sarah Menz as Mrs. Menz. Pike claims to be sole owner under provision (a) of the warranty deed (infra) executed by Thomas Dunning and his wife, Mrs. Dunning, on January 5, 1937. The answer of Mrs. Menz (her husband joined) is in two counts, and is in the nature of a cross petition. The first count is to reform the deed, and the second is to determine title. In the first count it is alleged that on January 5, 1937, Thomas Dunning sold the land to his wife, Mrs. Dunning, for $400.00; that she paid to him the $400.00; that he thereupon executed and delivered the deed and the property to her; that Mrs. Dunning continued in the actual possession of said property, claiming title thereto, from January 5, 1937, date of deed, until her death December 16, 1946; that she made at her own expense valuable improvements thereon; paid the taxes thereon; that her possession and claim of ownership were undisputed by Pike who stood by and saw her pay the taxes and make the improvements; that throughout the period of her possession, Pike recognized that said property belonged to his grandmother; that Pike is estopped to claim any interest or title in the property adverse to the title held by Mrs. Dunning. In the second count (to determine title), Mrs. Menz alleges that she is the owner in fee of said property as devisee under the will of Mrs. Dunning, her mother. And we might say here that Mrs. Menz, under the will, acquired whatever interest and title Mrs. Dunning had in the property. A guardian ad litem filed answer for the minor Hutson defendants. No special claim was asserted for them, but due proof was asked.

These questions are presented: (1) Did Mrs. Dunning take the whole fee title under the deed as Mrs. Menz contends, or if not, is Pike estopped to assert title as against whatever interest or title Mrs.

Dunning took under the deed?. (2) Did Pike take a defeasible whole fee interest under the provision (a) of the deed as he contends, or was the trial court's judgment and construction (see infra) correct?

A printed form was used in the preparation of the deed; the blanks were filled in with typewriter. We set out the deed, italicizing the typed parts. The deed follows:

"This indenture, made on the *5th* day of *January*, A. D. one thousand nine hundred *and thirty-seven* by and between *Thomas Dunning of Delta, Cape Girardeau County, Missouri*, party of the first part, and [577] *William Pike, Maggie Elizabeth Dunning and Essie Hutson*, all of the County of *Cape Girardeau*, in the State of *Missouri*, par*ties* of the second part:

"Witnesseth, that the said party of the first part, in consideration of the sum of *two and no one hundredths* dollars, to *him* paid by the par*ties* of the second part, the receipt of which is hereby acknowledged, *does* by these presents, grant, bargain and sell, convey and confirm, unto the said par*ties* of the second part and their heirs and·assigns the following described lots, tracts or parcels of land, lying, being and situate in the County of *Cape Girardeau*, and State of Missouri, to wit (here follows description).

(a) "*The above land is hereby granted in fee simple to William Pike but if he die before Maggie Elizabeth Dunning, his grandmother, then to her for her life and then in fee simple to Essie Hutson, the mother of William Pike.* (The (a) is our insertion for convenience in reference.)

"To have and to hold the premises aforesaid, with all and singular the rights, privileges,.appurtenances and immunities thereto belonging or in anywise appertaining unto the said par*ties* of the second part, and unto *their* heirs and assigns, forever, the said *Thomas Dunning* hereby covenanting that *he is* lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that *he has* good right to convey the same; that the said premises are free and clear of any incumbrance done or suffered by *him* or those under whom *he* claims, and that *he* will warrant and defend the title to the said premises unto the said par*ties* of the second part, and unto *their* heirs and assigns, forever, against the lawful claims and demands of all persons whomsoever.

In witness whereof the said party of the first part has hereunto set *his* hand the day and year first above written.

his<br>
Thomas X Dunning<br>
mark

her<br>
Maggie Elizabeth X Dunning<br>
mark

Signed and delivered in the presence of us:
Albert J. Hitt
Louise Hitt"

The deed was acknowledged before Albert J. Hitt, justice of the peace on January 5, 1937. Justice Hitt did not prepare the deed; Mr. and Mrs. Dunning came to him with the deed; signed it by mark, and Hitt and wife signed as witnesses. Justice Hitt was a witness and when asked if he knew who prepared the deed, said that he did not; that "Mr. Dunning told me he had an attorney." Hitt also said that he did not read the deed; that after acknowledgment he handed the deed to Mr. Dunning "and they went out with the deed in their possession"; it was filed for record January 7, 1937.

As appears the granting clause conveys to "the parties of the second part and their heirs and assigns"; provision (a), upon which Pike relies, follows the description; then the habendum is "to have and to hold the premises aforesaid", etc. "unto the said parties of the second part, and unto their heirs and assigns forever." Then the warranty "unto the said parties of the second part", etc.

As to provision (a) the trial court ruled: "The clause, of course, is in absolute conflict with the conveyance made in the body of the deed to all three parties and might indicate that the grantors intended to deed the property in fee simple to William Pike, plaintiff, and a life estate to Maggie Elizabeth Dunning, but the court could not figure out from this deed what estate they intended in this clause to grant to Essie Hutson, the mother of William Pike. I am therefore holding that this paragraph in the deed is absolutely void because it is too indefinite as to express any limitation on the above conveyance and the court believes that, so far as the deed is concerned, it conveyed a fee simple title to William Pike, Maggie Elizabeth Dunning, and Essie Hutson and that each have a one-third interest therein." The trial court found that Pike owned a 1/3 interest by virtue of the deed and a 1/36 interest by descent from his deceased mother, Essie Hutson; that Mrs. Menz owned a 1/3 interest by virtue of the will of Mrs. Dunning, and that the children of Essie Hutson, other than Pike, owned the remaining 11/36 interest.

As appears, supra, Mrs. Menz pleaded that Thomas Dunning sold the property [578] to his wife, Mrs. Dunning, for $400.00, and that such sum was paid. There was no evidence to support such claim. There was evidence to the effect that (1) Mrs. Dunning had occupied the property since 1926 or 1927 (with her husband, we assume), and she was occupying the property at the time of the execution of the deed and continued to occupy until her death (December 16, 1946); (2) that Pike, at the time of the execution of the deed, was a minor (age 19) and resided with his grandmother, Mrs. Dunning, and continued to so reside until some two months after his marriage (October 5, 1939); (3) that Mrs. Dunning paid the taxes after the execution

of the deed until her death; (4) that Pike disclaimed ownership until· after the death of· his grandmother; (5) that Mrs. Dunning made substantial repairs and improvements on the property and these Pike saw while being made. On the other hand Pike testified to the effect that he had an agreement with his grandmother by which she would pay the taxes and make repairs and improvements and for such would not pay rent, and there was evidence that he did claim ownership prior to his grandmother's death. There is nothing in the record to support reformation of the deed to show conveyance to Mrs. Dunning alone. There was evidence that she said that the property was hers, and that Pike had said that he would "sign it back to her" when he became of age, but there is no evidence at all that the scrivener (not identified) made a mistake in preparing the deed. And we might say that if it be assumed that the possession of Mrs. Dunning from the date of the deed (January 5, 1937) until her death (December 16, 1946) was adverse to Pike, that alone would not help Mrs. Menz, because 10 years had not run, besides Pike was a minor for 2 years after the deed was executed, and it is not claimed that Mrs. Dunning acquired title by limitation.

Was Pike estopped as Mrs. Menz contends? As stated, Pike testified that there was an agreement between. him and his grandmother, Mrs. Dunning, that she would make repairs, improvements, pay the taxes, and for such she would be relieved of paying rent. Mrs. Dunning was dead, and Mrs. Menz sought to have this evidence stricken because incompetent under Sec. 1887 R. S. 1939, Mo. RSA Sec. 1887. The trial court refused to strike because the evidence as to the agreement was elicited from Pike on cross examination by counsel for Mrs. Menz, and that Pike's evidence as to the agreement was responsive to the questions asked. And the record shows that such is the case. While the trial court made no specific finding on the question of estoppel, the effect of the finding was against the estoppel theory. Mrs. Menz pleaded estoppel and the burden was on her to establish it. We do not think that the present facts are sufficient to support estoppel and that the trial court ruled that issue correctly. Noell et ux. v. Remmert et ux., 326 Mo. 148,·30 S. W. (2d) 1009, l. c. 1015; Gnekow v. Met. Life Ins. Co. et al. (Mo. App.), 108 S. W. (2d) 621, l. c. 625.

Did Pike take a defeasible fee under provision (a) as he contends, or was the trial court's judgment and construction correct? In Pike's brief it is stated: "The intention of the grantor in this deed is. expressed in the typewritten words [provision (a)] immediately following the description and these words serve to create a fee simple in William Pike which is conditional upon his surviving Maggie Elizabeth Dunning. Upon the happening of the condition, that is, the death of William Pike prior to Maggie Elizabeth Dunning, the words provide that the defeased title shall go to Maggie Elizabeth

Dunning for life, with remainder to Essie Hutson. Since William Pike is living and both Maggie Elizabeth Dunning and Essie Hutson have since died, the happening of the condition which would defeat the fee simple condition of William Pike is impossible and he now possesses the whole title, or a fee simple absolute.''

The granting clause is to the parties of the second part, that is to Pike, Mrs. Dunning and Essie Hutson, and the general rule is that ''the granting clause will control any other clause of the deed inconsistent therewith, where it is impossible to ascertain the grantor's intention from a consideration of the entire instrument. . . . Any apparent inconsistency between the granting clause and other portions of the deed should be reconciled, if possible, and an estate conveyed in one portion of a deed by [579] clear, explicit, and unambiguous words cannot be diminished or destroyed by words in another part of the instrument, unless they are equally clear, decisive, and explicit.'' 26 CJS, Deeds, Sec. 129, p. 430. While provision (a) is inconsistent with the granting clause, the habendum, and the warranty, yet if it is clear, it should prevail, or if the grantor intended what he said in this provision it should prevail, even though it is subsequent to the granting clause. Utter et al. v. Sidman et al., 170 Mo. 284, 70 S. W. 702; Hunter et al. v. Patterson et al., 142 Mo. 310, 44 S. W. 250; Petty v. Griffith et al. (Mo. Sup.), 165 S. W. (2d) 412.

Provision (a) cannot be ignored merely because it is inconsistent with other provisions of the deed. Mr. Dunning was grantor, and it could be inferred that an attorney prepared the deed. Why was provision (a) inserted? At whose instance was it inserted? The record does not definitely answer these questions. The record, however, does show that Mrs. Dunning had occupied the property for some 10 years before the deed was executed, and the record shows that at the time of the execution of the deed Mr. and Mrs. Dunning were separated; that they later lived together again; how soon after the deed's execution does not appear. Pike was the young grandson of Mrs. Dunning; he was living in the property with her when the deed was executed; how long he had been with his grandmother does not appear. It could be inferred that Mrs. Dunning was interested in Pike; he wrote to her while in the Navy and in one of these letters he spoke of the property as his grandmother's. It is true that the property belonged to Mr. Dunning, but if he was to give it away, which in effect he did, some one must have suggested the beneficiaries, and we do not think it would be too much conjecture to say that Mrs. Dunning may have suggested provision (a) and Mr. Dunning did as she suggested.

Mrs. Dunning's age is not given, but it could be inferred that she was getting along in years; she was uneducated as was her husband, and neither could have phrased the provision, but the scrivener could have at their suggestion. It is true there was evidence by Mrs. Menz

and a daughter in law of Mr. Dunning and by Mr. Dunning himself that Mrs. Dunning referred to the property as hers. Under provision (a) she had a life estate and such expressions as Mrs. Dunning made would not necessarily be inconsistent with the notion that Pike took a defeasible fee under provision (a). And the same can be said as to Pike's references to the property as his grandmother's place. Also, for the same reasons, these expressions should not be considered as a construction of the parties themselves that the whole fee title was in Mrs. Dunning.

In the Utter case, supra, the "grant, bargain, and sell" was to Frances A. Clark; the habendum was "unto the said Frances A. Clark and her bodily heirs and assigns, forever." It was held that the named grantee, Frances A. Clark, took a life estate, with remainer in her bodily heirs. In that case the court said [170 Mo. l. c. 294]: "The modern rule, which prevails in this state, is much simpler (than the old rule) and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it no matter in what part of the instrument it is found."

In the Hunter case, supra, the premises of the deed named Joseph S. Hunter as the party of the second part; the granting clause was "unto him the said party of the second part and his heirs and assigns forever." Then followed the description. Immediately following the description was this provision: "Which real estate or land is hereby granted and conveyed to the party of the second part and to the heirs of his body forever with all and singular the appurtenances thereto belonging." The habendum was "unto him, the said party, and to his heirs and assigns forever." The court ruled as follows [142 Mo. l. c. 321]: "Here the grant in the premises is to Joseph S. Hunter, with specific limitations 'to the heirs of his body', while in the habendum it is to him and his heirs generally. Under the authorities above cited the latter clause of the [580] habendum must give way to the former clause of the premises, and the deed construed as creating a life estate in Joseph S. Hunter, with remainder to his children, the plaintiffs herein. By this construction, meaning and effect is given to all parts of the deed in consonance with the canons of construction before mentioned, so that the deed takes effect in the manner contemplated by the parties thereto."

In the Petty case, supra, the premises of the deed showed Lucinda B. Franklin was "the party of the first part", and Belle Ford Griffith was "the party of the second part"; the granting clause was "unto the said party of the second part, her heirs and assigns." Following the description was this provision: "The intention of grantor

herein being to convey to be˙ (the) said Belle Ford Griffith, grantee herein, a life estate only, and at her death to revert to G. M. Beal of Fremont County, Iowa, and his legal heirs.'' The habendum was ''unto the party of the second part, her heirs and assigns forever.'' The question was whether the grantee, Belle Ford Griffith, took the fee or a life estate. It was held that she took a life estate only. In the Petty case the court said [165 S. W. (2d) l. c. 416] : ''Even though there are repugnant and conflicting clauses in the deeds as to the nature of the estate created, yet if they may be reconciled the grantor's purpose will be carried out. 26 CJS, Deeds, Secs. 90, 128 ; 18 C. J., Secs. 224, 327. Even though the granting clause unequivocally conveys a fee simple title, yet if a subsequent clause cut the estate down '. . . there is a clear intention apparent from a construction and examination of the whole instrument and from surrounding or attending circumstances to grant a lesser estate, the deed should be construed in accordance with that intention . . . .' 26 CJS, Deeds, Sec. 131.''

The rulings in the cases, supra, which we have reviewed are to the effect that a clear and specific limitation provision in a deed, following the granting clause and designating a different estate conveyed than in the granting clause, will prevail over the granting clause as to the estate conveyed. Hence in the present case, and especially in view of the surrounding circumstances, we rule that by provision (a) in the present deed, Pike took a conditional fee, and that upon the death of both his grandmother, Mrs. Dunning, and Essie Hutson, his mother, the fee became unconditional.

The judgment should be reversed and the cause remanded with direction to the trial court to set aside the judgment and decree entered and enter a judgment and decree that Pike is the owner in fee of the land in question, and that Mrs. Menz and other defendants have no interest therein. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.