CHARLES W. BARTLETT, RESPONDENT, v. NATIONAL FINANCE CORPORATION, APPELLANT.—73 S. W. (2d) 451.

Kansas City Court of Appeals. June 11, 1934.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for respondent.

*Jacobs & Henderson* and *Thos. E. Deacy* for appellant.

REYNOLDS, C.—This action originated in the Circuit Court of Jackson County and was tried therein. It is an action by respondent against appellant upon an alleged contract existing between them, in which respondent recovered judgment against appellant in the trial court at the November term, 1932, thereof in the sum of $1,-304.93. The trial was had before the court without a jury upon an agreed statement of facts without other evidence, which agreed statement appears in full in the record. From such judgment, after an unsuccessful motion for a new trial, this appeal is prosecuted by appellant.

Appellant is a Missouri corporation, engaged in the business of collecting accounts and in the sale of what is styled a "Copyrighted Finance System" for use in connection with the collection of accounts, which consisted, among other things, of a series of form letters to be mailed to debtors and of certain services to be performed by appellant in connection with the collection undertaken where satisfactory results were not had from the letters sent out.

Respondent's petition alleged that, on December 3, 1926, respondent signed a certain proposed written contract submitted to him by appellant's representative, which recited that "In consideration of the purchase of a $200 Copyrighted Finance System the National Finance Corporation, agrees to pay to the purchaser thereof, one year from date of this contract, the sum of twelve hundred dollars, less the amount collected through the use of this Finance System, according to the instructions on the front page;" that the so-called "front page" of the proposed finance system contained instructions for the use and mailing out of the forms of appellant's finance system; and that the proposed contract, by its terms, was subject to acceptance by appellant.

Respondent's petition further alleged that, on said December 3, 1926, respondent paid to appellant the sum of $200 and turned over to appellant seventy-nine accounts aggregating $5,660.20 and thirty notes receivable aggregating $3,907.29; that the proposed written contract was by parole changed so that appellant should undertake and agree to attend to all correspondence and all matters necessary to the collection of the accounts and notes under the System; that, on said December 3, 1926, and again on March 28, 1927, appellant, by letters sent to and received by respondent, accepted said proposed written contract with the said parole modification or change and sent respondent a register number of the contract.

The petition further alleged that, the premises considered, appellant made and entered into a contract with respondent whereby, in

consideration of the payment of $200 by respondent, the appellant agreed to pay, one year from the date of said contract, the sum of $1,200 less the amount appellant collected on said accounts and notes receivable, so turned over to the appellant, and agreed to attend to all correspondence and matters necessary to the collection of said accounts and notes; that the provisions on the so-called "front page," referred to in said proposed written contract, were abandoned by the parties and there was substituted therefor appellant's agreement to attend to all correspondence and all matters necessary to the collection of the notes and accounts; and that appellant waived performance by the respondent of any and all matters on the so-called "front page" and was estopped to set up nonperformance thereof by the respondent.

The petition alleged that appellant collected the sum of $112.72 and had, on demand, refused to pay respondent the difference between said sum and said $1,200 guaranteed; that it prayed judgment for such difference in the sum of $1,097.28 with interest from date of demand.

Appellant's answer admitted that it was a corporation and that it made and entered into the printed Copyrighted Finance System contract mentioned in respondent's said amended petition and denied each and every allegation in respondent's petition "except as have been hereinbefore specifically admitted."

We gather, from the agreed statement of facts in the record, that, on December 3, 1926, the respondent purchased a Copyrighted Finance System for the use aforesaid of making collections and that said purchase was evidenced by a written contract between the parties, entered into on said date, which contract recited, in part, as follows:

"In consideration of the purchase of a $200 Copyrighted Finance System the National Finance Corporation, agrees to pay to the purchaser thereof, one year from date of this contract, the sum of twelve hundred dollars, less the amount collected through the use of this Finance System according to the instructions on the front page.

"The National Finance Corporation has established a cumulative Reserve Fund, based upon a table of experience, for the purpose of paying any claims arising out of this and similar contracts.

"NATIONAL FINANCE CORPORATION,
"(Signed) KAW RIVER SAND CO.,
"CHARLES W. BARTLETT.
"CHARLES W. BARTLETT,
"Purchaser."

The contract was a printed form prepared and furnished by appellant and, when signed by respondent, was treated as a proposal by respondent to appellant. It was made subject to acceptance at Kansas City, Missouri, and provided that, upon acceptance, the purchaser should receive a register number.

It was recited upon the form, upon which the contract above recited in part appeared, and at the head thereof that a reproduction of the front page of the finance system appeared on the reverse side of said page or form. Among the recitals upon the reverse side of said printed contract appeared the following, under the head "Instructions:"

"This Certifies that ———— has purchased this Finance System for five hundred accounts (Consideration $200.00) from which this Finance System is Guaranteed to Collect twelve hundred dollars ($1,200.00).

"It is understood that this Finance System will not be applied on any accounts under $2.00 each and that they will aggregate more than $4,000.00."

Other instructions and matters appear upon said reverse side which it is not necessary at this point to state.

The original contract as printed was modified by oral agreement so as to require the use of the system and all matters incident to the collection of the notes and the accounts to be turned over, including all correspondence, to be performed by appellant rather than by respondent. At the time the original printed contract was executed by respondent and the oral modification thereof made as stated, respondent delivered to appellant for collection by appellant through the use of the system seventy-nine accounts aggregating over $5,500 and thirty notes aggregating over $3,900 and paid appellant the sum of $200, the consideration to be paid it under said contract for said system. Upon the same date with the signing of the contract by respondent, acknowledgment by letter was duly made by appellant of the acceptance of the contract as executed by respondent, including the oral modification, which letter also stated that appellant was retaining the System purchased by respondent at its offices and that the form letters would be sent direct therefrom. Later, on March 28, 1927, appellant mailed a duplicate copy of the contract with respondent's register number endorsed thereon, which duplicate copy was of both the original printed form signed by respondent and the matters on the reverse side of said form including the instructions thereon.

The appellant collected and paid over to respondent, under the contract in force between them, the sum of $112.72. For the payment to the respondent of the difference between said sum and the sum of $1,200, it is admitted that respondent made due demand on May 22, 1928, and that appellant has at all times refused compliance with such demand.

The agreed statement of facts, with various exhibits attached thereto and made a part thereof marked A, B, C, D, E, F, G, H, I, and J, was introduced in evidence upon the trial. There was no other evidence. At the close of the case, both the appellant and the respondent requested certain declarations of law. Those requested by

appellant were refused while those for respondent lettered A, B, C, and D were given. After the giving of such instructions for the respondent, the court announced that the decision made by it would not be based upon Instruction A but upon instructions B, C, and D.

· By declaration A, given at the motion of respondent, the court declared that respondent was entitled to recover against the appellant; by declaration B, that it was the intention of the parties that there would be no minimum limitation of five hundred upon the accounts turned over to appellant in order to entitle the respondent to a guaranty of $1,200; by declaration C, that the language of exhibit C, "for five hundred accounts," meant "for not more than five hundred accounts" and therefore constituted no defense to respondent's petition; and, by declaration D, that respondent was entitled to recover $1,097.28 with six per cent interest from May 22, 1928.

The court refused a peremptory declaration requested by appellant to find for appellant and a declaration requested by it that respondent could not recover if he had not turned over five hundred accounts.

## OPINION.

1—The main question involved upon this appeal relates to the proper construction to be given the contract which appears to be the basis of the cause of action stated in the petition.

In fact, the controversy in the briefs revolves about the construction made by the trial court of such contract as indicated by its declarations of law given upon the agreed facts and by the judgment resulting therefrom.

2—It is contended by appellant that, under the plain terms of the contract, in order to avail himself of the guaranty clause in the contract and to recover thereon herein, respondent was required to furnish five hundred accounts aggregating in amount a sum in excess of $4,000, none of which accounts were to be less in amount than $2; that respondent, having furnished only seventy-nine accounts and thirty notes although aggregating a sum in excess of $4,000, is in default and therefore is not entitled to recover herein; that, before appellant could become liable upon its guaranty of collection of the amount equalling $1,200, there must have been at least five hundred accounts handled, or furnished by respondent to be handled, according to and under the system contracted for.

This contention of appellant appears to be based upon a provision printed under the head "Instructions" upon the reverse side of the printed form signed by respondent, which provision appellant contends is a part of the contract signed and executed, by incorporation therein by reference, and is as follows: "This Certifies that ———— has purchased this Finance System for five hundred accounts (Con-

sideration $200.00) from which this Finance System is Guaranteed to collect twelve hundred dollars ($1,200.00)."

3—In answer to appellant's contention, respondent says, first, that the said provision, upon which appellant relies, is no part of the contract executed; that it appears upon the reverse side of the page upon which the printed form signed by respondent appears and is referred to on said page as the ''reproduction of the front page of the Finance System on the reverse hereof.''

It is contended that the reference to the matters on the reverse side as the ''reproduction of the front page of the Finance System'' was not sufficient to incorporate said provision, though found thereon, as a part of such contract and, also, that the clause found in said printed form referring to collections made through the use of the finance system according to the instructions on the front page was likewise insufficient to incorporate such provision as a part thereof. It is doubtless true that the words making reference to matters as a ''reproduction of the front page of the Finance System,'' standing alone, were not sufficient to incorporate such matters, including the provision in question, for the reason, if no other, that they form no part of the contract found upon such printed form. Yet, the words found in the printed contract referring to the amount collected through the use of the finance system according to the instructions on the front page, by which the amount of its liability when so used was to be diminished, were sufficient to incorporate such instructions as were found on the said page into said contract and make them a part thereof. The view here taken is not in conflict with Gibson v. State Mutual Life Assurance Company, 184 Mo. App. 656, 171 S. W. 979; State ex rel. New York Life Insurance Company v. Trimble et al., 306 Mo. 295, 267 S. W. 876; and Grand Lodge of United Brothers of Friendship and Sisters of Mysterious Ten v. Massachusetts Bonding and Insurance Company, 324 Mo. 938, 25 S. W. (2d) 783, cited in respondent's brief, but is in harmony with the same. That such provision was an instruction—at least so far as it related to the number of accounts, requiring the handling or furnishing of five hundred accounts in the use of the system—we think there can be no doubt.

4—The contract amounted to a guaranty that at least $1,200 would be realized out of the accounts collected where five hundred accounts were handled. Such provision was therefore an instruction that such number must be handled to make the guaranty available and to render appellant liable thereon. Only when five hundred accounts were handled and not otherwise did it amount to a contract for a guaranty of $1,200.

5—The reference, therefore, in such provision to the purchase of this finance system ''for five hundred accounts (Consideration $200.00) from which this Finance System is Guaranteed to Collect

twelve hundred dollars'' was to a system furnished at a cost to the purchaser of $200 for the production of at least $1,200 in collections, to accomplish which accounts to the number of five hundred were required to be handled, aggregating in excess of $4,000 in amount, none of which were to be less in amount than $2.

6—It is further contended that the provision with reference to five hundred accounts was a mere printed form of a recital left in blank and formed no part of the instructions to which reference was made. We cannot so approve.

The part that was left in blank was a space for the recital of the name of the purchaser. As the purchaser's name was fully disclosed by his signature, it was not necessary that his name be inserted in such blank space in such provision. While such ''reproduction'' might have been a mere recital of what was on the front page referred to, the matters incorporated were the instructions appearing on the front page which were reproducted on the reverse side of the page on which the contract appeared. That such provision did form a part of the instructions incorporated has been hereinbefore shown. Likewise, in the same manner, the provision under the head of ''Instructions'' declaring ''It is understood that this Finance System will not be applied on any accounts under $2 each and that they will aggregate more than $4,000'' became a part of the contract by incorporation. It amounted to an instruction that the system must not be applied to any account less than $2 in amount and that accounts aggregating an amount in excess of $4,000 must be handled.

7—It is argued that, the contract between appellant and respondent being for the collection of seventy-nine accounts and thirty notes by appellant, in applying its system in its own way and in consideration of $200 paid it by respondent, appellant guaranteed that as much as $1,200 would be collected upon such accounts and notes and that such was the contract proposed by respondent and accepted by appellant through its letters of December 3, 1926, and March 28, 1927. This argument is based, in part, upon the fact that, at the time of the execution of the printed contract, December 3, 1926, respondent turned over to appellant the seventy-nine accounts and thirty notes to be handled under said contract and upon the assumption that the same were accepted by appellant as the entire number of accounts required to be handled to make the guaranty clause effective. However, it must be borne in mind that the printed contract executed called for the handling of five hundred accounts and that the guaranty clause therein for $1,200 was made dependent upon the handling of such number of accounts within a year; and the mere agreement that such system should be retained by appellant at its office and that it should attend to all matters incident to the collections handled and send out all correspondence from its

office instead of such things being performed by respondent personally, as in the usual course, did not, in itself, amount to an abandonment or waiver of the requirement for five hundred accounts to be furnished and handled during the year; but the requirement for five hundred accounts to be furnished continued in force, unaffected thereby. Nor is such conclusion affected by the further fact that, at the time of the execution of the contract, one hundred and nine accounts had been furnished by respondent and accepted by appellant for handling, unless it was understood and agreed that said accounts were accepted in lieu of the full five hundred required and that liability upon the guarantee should nevertheless arise. The agreed statement does not show any such understanding and agreement.

8—It is contended by the respondent that the contract was made for the handling of such accounts alone and the guaranty of $1,200 was based upon the furnishing and handling of such accounts alone; that said accounts were all that respondent had; that appellant accepted the same with such knowledge and with the understanding that no more were to be furnished; and that it agreed to guarantee the collection of $1,200 from the same. However, the agreed statement, including the letters described as exhibits F and G made a part of said statement and relied upon by respondent, does not, in our opinion, so show or bear out respondent's contention. Such letters amounted merely to an acknowledgment of the receipt of respondent's proposal and its acceptance and to an acknowledgment of appellant's agreement to retain the system at its office and to send out therefrom all the correspondence required in the application of the system. Such letters did not purport to waive the requirement for five hundred accounts to be furnished or handled or to make any agreement whatever to the effect that the one hundred and nine accounts were all that were required to be furnished in order to make its guaranty of $1,200 effective. Such contention is, therefore, denied.

9—It is also contended that appellant gave to the contract a construction which precludes the defense now asserted by it, in accepting respondent's proposal and treating the contract as having been performed by respondent and in recognizing that all other performance was to be upon its part. However, the proposal made by respondent and accepted by appellant required the use of the finance system according to the instructions on the front page in order that respondent might avail himself of the guaranty clause, which included a requirement for the handling of five hundred accounts; and there was no provision included dispensing with the necessity of such requirement. The appellant, by agreeing to do all the work required incident to the collections and to retain the system at its office and send out all letters from its office, did not agree that respondent might avail

himself of the guaranty clause without furnishing five hundred accounts in the amounts specified and did not relieve respondent of the necessity of furnishing such number. In the nature of things, appellant itself could not have furnished the accounts to be handled. It could only handle the accounts furnished by respondent. It made no agreement otherwise. Whether respondent wished to avail himself of the guaranty clause was a matter optional with him. In order to avail himself of such clause, it was necessary that he furnish 500 accounts. It was so provided in a clear manner in the contract. There was no construction by appellant that respondent could avail himself of such clause without furnishing such number. It has at all times denied liability upon the guaranty clause for the reason that a less number of accounts than that required therefor had been furnished. By its practice in the instant case, it may have handled a less number of accounts than five hundred; but such did not amount to a construction that only such less number was required to make the guaranty clause available or that appellant might be required to furnish the additional number to make five hundred when respondent failed to furnish them or that there might be a recovery upon the guaranty clause where less than five hundred were handled.

10—It is contended that the only instructions referred to as appearing upon the reverse side of the printed form of contract related to the use by the purchaser of the finance system furnished prior to the time the accounts and notes were turned over to appellant for collection and, in effect, that, such notes and accounts having been turned over to appellant at the incipiency of the contract, there were therefore no instructions in force requiring the use of such system in any specific manner or requiring the use of such system at all under the contract between appellant and respondent but that appellant, by accepting said accounts and notes and agreeing to do all the work incident to their collection, became obligated upon its guaranty for the collection of $1,200, regardless of the methods pursued. We are unable to concur in such contention.

11—It is unnecessary to enter fully into the refined discussions in the briefs as to the significance of the word "for" and its setting in the controverted clause wherein it is recited that "This Certifies that ———— has purchased this Finance System for five hundred accounts (Consideration $200.00) from which this Finance System is Guaranteed to Collect twelve hundred dollars." It is clear that the use of the word is to indicate a system purchased for the collection of accounts at the price of $200, which system provides for a guaranty that collections shall be made amounting at least to $1,200, in which system the handling of five hundred accounts is required, aggregating in excess of $4,000, none of which shall be less in amount than $2—in other words, to indicate a finance system purchased

which requires the handling of five hundred accounts to produce a guaranty of $1,200 and create liability therefor under said contract.

12—It is argued by respondent that the language used did not create a contract for the furnishing and handling of five hundred accounts but required the handling of only such accounts as might be furnished to the number of five hundred and that, by the insertion of such number, it was not meant that it should be the minimum number that might be furnished—in other words, that it was optional with respondent whether he furnished five hundred accounts or a less number and, whether he furnished five hundred or a less number, the guaranty of the collection of $1,200 would nevertheless obtain and be available to him.

We do not so read the contract. The provisions thereof made it necessary, in order for liability upon the guaranty clause of $1,200 to arise, that five hundred accounts be first handled; and, until such number be handled, aggregating a sum exceeding $4,000, none of which should be for less than $2 in amount, no liability attached upon the guarantee. In fact, until such number should be handled, no guaranty would arise to be liable upon. It is necessary that respondent should have furnished five hundred accounts in order now to avail himself of the guaranty provisions of the contract sued upon or should have shown a specific contract with appellant for the servicing of the one hundred and nine notes and accounts delivered, by which contract it was agreed that, in consideration of the $200 paid it, appellant should collect at least $1,200 of them. He has not shown either.

13—It is elementary that, in a suit upon a contract, the plaintiff is required to show a performance upon his part of all the conditions required of him or facts constituting a waiver by the opposite party of such performance in order to recover thereon.

14—It is unnecessary to consider the action of the trial court in the giving and refusal of instructions requested. The cause having been submitted upon an agreed statement of facts, the only question is ''Was the judgment rendered authorized upon the facts as agreed to be?'' regardless of instructions given or refused. [Jewell Tea Co. v. Carthage, 257 Mo. 383, 165 S. W. 743; Hinkle v. Kerr, 148 Mo. 43, 49 S. W. 864; Payne v. First National Bank of St. Charles, 43 Mo. App. 377.] At best, in such a case, the instructions given and those refused by the court serve only to show the path followed by the court in reaching its conclusion. The contract as reflected in the finding of facts was clear and unambiguous.

15—There is much said in the briefs concerning various rules to be kept in mind in the construction of a contract to the effect that a contract prepared and furnished by one of the parties thereto should, with respect to the meaning thereof, where uncertain or ambiguous in intent with respect to any feature, be most strongly construed

against the contention of the party making it and concerning another rule to the effect that surrounding circumstances are to be taken into consideration in order to ascertain the meaning of the parties when such meaning is in question. We have no fault to find with such rules and have given them due consideration, so far as the same may have been applicable, in what has been said. However, it is not the privilege of the court to make a contract for the parties. They should be permitted to make it for themselves, and it should be construed and given effect as made. The plain language of the contract as written certified that respondent had purchased a system for 'the handling of five hundred accounts to produce a collection of $1,200 or a guaranty thereof. So, to construe said clause that liability for said guaranty might attach upon the handling of a less number is but to incorporate words not in said contract—that do not appear therein—and give it an effect far different from that to be given by the words actually used. In any event, the agreed statement of facts warranted but one judgment under the law and that was a judgment for appellant.

16—The judgment rendered was unauthorized upon the agreed statement. We have duly considered all points in the briefs of the respective parties and have given due consideration to the views of the trial judge as disclosed by his judgment upon the record and have deferred thereto so far as, in our judgment, was proper. The conclusion reached by us, upon the whole record, is that the learned judge who tried the case below wrongly interpreted the facts and the law applicable thereto and that the judgment pronounced was erroneous and should be reversed. It is accordingly so ordered. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed. All concur.