**Frank BOEHM, Plaintiff-Respondent,**

v.

**C. J. KINDLE, Lyndon Kindle, Eva Lee Pritchard and Robert Kindle, Defendants-Appellants.**

**No. 31831.**

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

David L. Colson, Smith & Colson, Farmington, for plaintiff-respondent.

Melvin L. Hertzman, St. Louis, Robert A. McIlrath, Flat River, for defendants-appellants.

WOLFE, Judge.

This is an action on a purported breach of warranty. There was a verdict and judgment for the plaintiff and the defendants prosecute this appeal.

The facts are that plaintiff entered into a contract with the defendants to buy from them all of the corporate stock of Farmington Transfer, Inc. This corporation was

what is known as a short-line carrier operating from terminals in Farmington, Poplar Bluff, and St. Louis, Missouri. Plaintiff met on July 14, 1960 with Lyndon Kindle, who acted on behalf of all of the stockholders. Plaintiff Boehm and Lyndon Kindle met in the office of the plaintiff's attorney in St. Louis and a contract of sale was discussed. It was agreed that Boehm would purchase all of the stock of the corporation for $55,000. The contract was drawn up the day following. It was agreed that the sellers would continue to operate the corporation until it was taken over by Boehm. This he did on August 15, 1960. The only provisions of the contract relied upon by the plaintiff are designated as Section (d) and (e) of Paragraph 3, which are as follows:

"3. Sellers warrant and represent:

\* \* \*

"(d) That included among the assets of Farmington Transfer, Inc. on July 15, 1960 are the motor vehicles, trailers and other equipment, all as more particularly described in Exhibit C attached hereto, and incorporated herein by reference the same as though fully set forth herein.

"(e) Sellers have furnished to Buyer a copy of the balance sheet of Farmington Transfer, Inc. as of July 15, 1960, attached hereto marked Exhibit D, and incorporated herein by reference the same as though fully set forth herein, which said balance sheet truly reflects the assets and liabilities of Farmington Transfer, Inc., as they appear on its books as of said date."

The evidence disclosed that when the parties met to discuss the terms of the contract on July 14 the plaintiff's attorney requested the sellers to furnish a balance sheet of the corporate assets and liabilities. Mr. Lyndon Kindle telephoned to a Mr. Gray who was in Farmington where the corporation had its main office. He had done some tax work for the Farmington Transfer, Inc. and Kindle asked him to prepare a balance

sheet and send it up that afternoon to St. Louis. Gray told him that he could not prepare an accurate statement in such a short time. He had only two hours after the call to prepare it. He told the same thing to the lawyer who was put on the telephone and the lawyer said they wanted "some idea" about what they were buying. Gray then prepared and sent up the statements requested and they were typed and made the Exhibits C and D mentioned in Paragraph 3 (d) and (e) set out above. The Exhibit C attached to the contract was a list of equipment mentioned in 3(d) and Exhibit D attached to the contract was a "Financial Statement July 15, 1960" mentioned as the "balance sheet" in 3(e). The balance sheet showed total assets of $74,678.47 and one of the items listed was "cash on hand and in bank" $10,068.32. The liabilities listed "accounts payable" as $485.00. It was plaintiff's contention that both of these items were erroneous.

The presentation and reception of the evidence below was marked by such a cavalier disregard for the rules of evidence and in such irrational and compound confusion that it is difficult to clearly state the facts. The plaintiff was called as the first witness and disclaimed any knowledge of the company's finances stating that the operation of it from the time he acquired the stock on August 15, 1960 had been left to Joseph Dunne. Dunne was made president of the company. Dunne disclaimed any knowledge of the financial status of the corporation as of July 15. He did, however, state that the company had on deposit at least $500.00 in a clearing house arrangement with the Cass Bank of St. Louis and a similar minimum sum of like amount with the Transport Clearing House.

It should be noted that this $1,000.00 of assets was not included in the financial statement attached to the contract on July 15. The third witness called was a Mr. Helm, Certified Public Accountant, and he testified that he audited the corporate bank accounts in the First State Bank of Farmington and the Poplar Bluff State Bank.

He stated that the balances as of July 15, after taking off outstanding checks, totaled $4,994.48 rather than $10,068.22 as shown on the contract statement. He also testified that the total accounts payable were $3,968.15 rather than $485.00 as shown on the contract statement.

For reasons not apparent the plaintiff then called Mr. Gray to the stand who testified that he assisted Mr. Helm in checking the books. He had prepared a revised list of assets which the plaintiff introduced as his "Exhibit K." This showed the total assets to be $80,993.35, or $6,314.88 more than the total assets listed on the statement given at the time of the drawing of the contract. The witness stated that the difference arose by reason of the failure at the time that the original statement was drawn to include office equipment, and other miscellaneous corporate properties. In this statement Gray found the bank balances to total $6,072.49 instead of $4,994.48 as stated by Helm. Neither Helm nor Gray include the $500.00 in the Cass Bank or the $500.00 in the Transport Clearing House.

The defendants' evidence added little to the foregoing. The stock of the Farmington Transfer, Inc., was owned exclusively by the Kindle family; C. J. Kindle, his wife, daughter, and two sons. The corporate bookkeeping consisted of a single entry system and a bookkeeper was employed and supervised by C. J. Kindle. Kindle stated that in 1959 he had made a false entry of withdrawal of $4,000.00 so that the balance appearing in the books would always be $4,000.00 less than the actual bank balance. He said that he did this because some people who worked for him liked to know too much about his business and they would go in at times and look at the books.

The bookkeeper knew of the false entry and when she wanted the true balance she would add $4,000.00 to the book balance. She testified that she figured the bank balance in the Farmington Bank as shown on the books for July 14, 1960 and that it was $3,902.74. She then added the $4,000.00 to get the true balance, which gave her $7,902.74 in the Farmington Bank. To this she added $2,316.15 which was in the Poplar Bluff bank, and cash on hand amounting to $60.57. All of this totaled $10,279.46. She did not add to this figure the $1,000.00 deposits in the two clearing house accounts mentioned, and she could not account for the difference between the amount she testified to ($10,279.46) and the amount stated in the balance sheet of July 14 ($10,068.32).

C. J. Kindle told of taking $2,000.00 from the bank account which he kept in payment to himself for rent owed to him by the corporation. Sellers operated the company for one month after the date of July 15 as they were supposed to do under the contract.

As stated, the jury found for the plaintiff and returned verdict for $10,583.33. The first point raised is that the jury was improperly instructed in the verdict directing instruction designated as "No. 1." This instruction predicated a verdict upon the defendants having deceived and defrauded the plaintiff. The action was for a breach of warranty and one cannot sue on that and submit his case on fraud, Lorraine v. E. M. Harris Building Co., Mo.App., 391 S.W.2d 939. The plaintiff counsel concedes that neither the pleading nor the proof supports the instruction and he confesses the error asserted by the defendants-appellants.

The appellants also seek to have judgment reversed upon the ground that the plaintiff buyer did not comply with one of the terms of the contract. The contract contained the following provision:

"2. Buyer agrees to pay Sellers the purchase price of fifty-five thousand ($55,000.00) dollars, above, as follows: one thousand ($1,000.00) in cash upon execution of this agreement, forty-four thousand ($44,000.00) dollars in cash upon the date of the consummation hereof, and the balance of ten thousand ($10,000.00) dollars to be deposited in

escrow with the First State Bank of Farmington, Missouri, on the date of consummation, to be held by said bank subject to the following terms and conditions:

"Should any claim or claims, demand or demands, or liability or liabilities, of any nature whatsoever, excepting for liabilities or claims adequately covered by valid policies of insurance, be presented to Farmington Transfer, Inc., prior to February 1, 1961, which said claim or claims, demand or demands, or liability or liabilities, contingent or otherwise is not disclosed on the balance sheet of Farmington Transfer, Inc., as of July 15, 1960, Buyer shall notify the said Bank thereof and unless Sellers pay or otherwise secure the full release thereof said Bank shall retain said Ten thousand ($10,000.00) dollars or so much thereof as may be necessary to save the Buyer and Farmington Transfer, Inc., harmless from said claim or claims, demand or demands, liability or liabilities until the same shall have been finally determined and released. With the approval of the Buyer and the Seller, the Escrow Agent shall pay any such claims, demand or liability directly to the claimant. In the event any such claim, demand or liability be the subject of litigation, Seller shall pay all expense and cost thereof, including attorney's fees and in default thereof, upon the presentation to the Escrow Agent of receipts therefor, the Escrow Agent shall reimburse Buyer or Farmington Transfer, Inc. for sums so expended."

■ Payments were made in accordance with the terms of the contract and the $10,000.00 was placed in "escrow." There is no evidence that the buyer ever sought recovery from this fund or any evidence whatsoever about the fund. The appellants contend that since the buyer failed to prove that he had presented the claim to the escrow agent he is barred from recovery. It is, of course, true that where one sues on a contract he must generally prove his own performance under the contract. Bartlett v. National Finance Corporation, 228 Mo. App. 789, 73 S.W.2d 451; Rosen v. Alside, Inc., Mo., 248 S.W.2d 638. However, that rule would only be invoked where the failure to comply would in some way work to the disadvantage of the other party to the contract. Here the "escrow" arrangement was for the protection of the buyer. There is no evidence that his failure to employ the protection provided him did in any way work to the disadvantage of the sellers. This point is therefore ruled against the appellants.

■ The case must be reversed because of the erroneous instruction given. It must be re-tried. As stated, it was tried to a jury and they heard a mass of confusing testimony and were handed bundles of checks, a large stack of accounts payable, and a bundle of petroleum charge slips, all of which were obviously meaningless to the jury. We mention this so that the court and counsel upon re-trial will consider referring the case to a referee and their attention is directed to § 515.010 and § 515.020 V.A.M.S., which provide for the appointment of referee, by consent of parties, or by the court, where parties do not consent and the issue of fact requires examination of a long account on either side.

The judgment is reversed and cause remanded for a new trial.

RUDDY, P. J., and SAMUEL E. SEMPLE, Special Judge, concur.

ANDERSON, J., not participating.