MATHY and others, Appellants, vs. MATHY and others, Respondents.

*April 9—May 7, 1940.*

*John J. Colignon* of Green Bay and *W. E. Wagener* of Sturgeon Bay, for the appellants.

For the respondents there was a brief by *Frank G. Weis* of Sturgeon Bay and *L. W. Bruemmer* of Kewaunee, and oral argument by *Mr. Weis*.

FOWLER, J. As appears from the foregoing statement of facts the action was brought to quiet title. The parties claim through a warranty deed of a common grantor. The introductory clause of this deed recites that the deed was made between "Toussaint Mathy and Mary Mathy, his wife, during her lifetime and after her death to the children of said Toussaint Mathy, parties of the second part."

It is contended by the plaintiffs that the granting clause of the original deed controls the introductory clause, and as the granting clause does not purport to convey a life estate but a fee it therefore must be taken as overriding the introductory clause and as conveying a fee.

It is true that the original deed conveyed the fee. The grantor held an estate in fee and the deed conveyed all the estate that the grantor had. It is also true that the grantor warranted the title as in fee. But all this is not inconsistent with the granting of a fee in remainder after a life estate:

The plaintiffs to support their contention rely on what was said by Mr. Justice OWEN in the original opinion of the court in *Weber v. Nedin*, 210 Wis. 39, 43, 242 N. W. 487, 246 N. W. 307, 246 N. W. 686, to the effect that the grant-

ing clause of a deed controls over other words and phrases, citing *Fries v. Kracklauer,* 198 Wis. 547, 551, 224 N. W. 717. This opinion expressed the view that the granting clause of the deed which conveyed the premises to the persons named in the introductory clause, "their heirs and assigns forever," was inconsistent with the statement in the introductory clause indicative of an express intent to create a joint estate. Upon motion for rehearing it was pointed out that there was no such inconsistency; that the words "to their heirs and assigns forever" were in fact "the identical words which at common law were used to create an estate in joint tenancy." *Weber v. Nedin, supra,* p. 46. It is further said in the opinion on rehearing, p. 48, that what was said in *Fries v. Kracklauer, supra,* "about the use of the words 'their heirs and assigns,'" on which statement the original opinion was largely, if not entirely based, was "withdrawn."

If it were true that there is inconsistency between the introductory and granting clauses of the original deed it would be necessary to bear in mind, in determining the meaning of the deed, that when the instrument is drawn on a printed form, written or typed portions of it are more strongly indicative of intent than seemingly inconsistent language of the printed portion. Such provisions are likely to be inserted, especially by unskilled scriveners, wherever there is a blank space to insert them rather than where in legal sequence they properly belong. There is no room in the granting clause of the printed form used in the instant original deed to interline or insert the provision written into the introductory clause. That provision was most likely placed in the first blank space that afforded room for it.

The plaintiffs ask in an amended complaint for reformation of the original deed on the ground of mistake. But there is no evidence of any mistake in the drafting of it. None of the parties to the instrument testified to any mistake. It was perhaps a mistake to have had the deed drawn by one not a lawyer, but that is the kind of a mistake for the correc-

tion of which no remedy has yet been found. The rights of the parties must be left to rest on the construction given to the deed.

It is agreed by counsel for both parties that unless reformation may be granted the intent of the parties to the original deed governs its construction. It is true as contended by the appellants that all deeds convey a fee-simple estate unless a less estate is expressly limited. But as above stated a fee-simple estate is conveyed, although it be in remainder after a life estate. In determining the intent of the parties, the language of the deed itself must be given the effect that it reasonably bears. It is of course true that in construing any instrument the situation of the parties when the instrument was drawn may be considered and the instrument must be viewed in the light of the existing circumstances. It is argued that it is unlikely that Toussaint Mathy, who presumably was the one paying the $10,500 consideration for the deed, although there is no testimony to that effect, could have intended to limit the individual interest in the premises to a joint interest with his wife during her life, but that is what the introductory clause in the deed plainly says. The trial court inferred that as the wife was thirteen years younger than the husband, the husband's idea was that he would die first; that he wanted to protect his wife for her life, but did not want her on surviving him to have the fee and be in position if she married again to divert the property from his children; and he therefore limited her estate on surviving him to her life and had the remainder vested in his children. That is perhaps as reasonable an inference as any that could be drawn.

It is also argued that in deeding the premises to their son Alphonse the parents could hardly have intended to have taken nearly $7,000 from him for an estate limited to the life of his mother, and that the parents could hardly have intended to take $5,000 from the husband's brother upon the security of a mortgage of an estate so limited. That the son

or brother could not have understood that the interest of the son was so limited is of course plain. Mary was fifty-one years of age at the time the deed to Alphonse was executed. If Toussaint and his wife were aware of the state of the title and understood that the estate conveyed to Alphonse was limited to the life of Mary, they committed a gross fraud upon both their son and on Toussaint's brother, and it is hardly conceivable that they actually so intended. A more reasonable inference is that in the fifteen years that had elapsed since the execution of the original deed they had forgotten the express provision for the children of Toussaint incorporated in the original deed and had forgotten that they intended when the original deed was executed, the deed should grant an estate in the premises precisely as expressly stated in the introductory clause. It may also more reasonably be inferred that when Toussaint and Mary conveyed to Alphonse they considered that what they had given they might take away than that they intended to commit a fraud on Alphonse when they sold the land to him or on Louis when they sold the mortgage to him. But the law, of which they were ignorant, is that the delivery of the deed by the original grantor was a delivery for all and to all of the second parties and that whatever Toussaint or he and Mary had caused to be vested in the children of Toussaint by that delivery they could not afterwards take away from them or deprive them of. The estate conveyed to the children of Toussaint by the delivery of the original deed was an expectant estate, or an estate in expectancy. The latter is defined in 1 Bouv. Law Dict., Rawle's Third Revision, p. 1156, as one where "the enjoyment is postponed, although the estate or interest has a present legal existence." Sec. 230.32, Stats., which was in existence when the original deed was drawn, provides:

"*Expectant estates not defeated.* No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any

destruction of such precedent estate by disseizin, forfeiture, surrender, merger or otherwise."

The appellants urge that when an instrument is reasonably susceptible of two meanings the practical construction given to it by the acts of the parties after his execution is of great force in determining its construction. But if it were conceded that the language involved in the introductory clause is susceptible of two meanings, to make the rule invoked apply, the acts of the parties afterward to constitute a practical construction must be the act of all of the parties in interest. There is no evidence that any of the children of Toussaint but Alphonse ever had any part in or knowledge of the acts of Toussaint and Mary that are suggested as constituting a practical construction. The deed speaks as of the time of its execution and delivery, not as of the time when Toussaint and Mary executed their subsequent mortgages.

We are constrained to construe the deed on which the parties hereto based their claims as the trial court construed it. The language of the introductory clause first herein quoted, taking it as meaning what is says, cannot be construed into any other meaning. It clearly shows that whatever they came to think about it afterward, when Toussaint and Mary had the deed executed they intended the land to go as therein expressed,—to Toussaint and Mary during the life of Mary and after her death to Toussaint's children. They having then so intended, so the land was transferred.

*By the Court.*—The judgment of the circuit court is affirmed.