Roy J. BECKER and Margaret M. Becker, his wife, Respondents,

v.

Harold R. WORKMAN and Elizabeth J. Workman, his wife, Appellants.

No. 36352.

Missouri Court of Appeals, St. Louis District, Division Four.

Oct. 21, 1975.

**4**

Gordon F. Webb, Clayton, for appellants.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Samuel Richeson, Nicholas G. Gasaway, Hillsboro, for respondents.

NORWIN D. HOUSER, Special Judge.

Roy J. and Margaret M. Becker filed suit against Harold R. and Elizabeth J. Workman to quiet title to certain land situate in Jefferson County. Defendants filed an answer and counterclaim praying that title be quieted in them. Plaintiffs filed a reply setting up title by adverse possession (a theory not pursued at trial). The parties own adjoining tracts of land, plaintiffs' property lying west of defendants' tract. This is a dispute as to the location of the dividing line. It involves title to a 2.45 acre tract. The trial court, sitting without a jury, found the issues for plaintiffs and against defendants, both on petition and counterclaim, and quieted title to the 2.45 acre tract in plaintiffs. Defendants have appealed.

The common source of title is Robert H. Cobb.

In 1967 Cobb deeded to plaintiffs Becker the north half of a quarter section, less and excepting two tracts, one of which was described as a 23 acre tract, more or less, conveyed by Cobb to Oliver in 1961. The controversy grows out of the description of the western boundary line of that tract in the Cobb-Oliver deed, as follows: " * * * bounded on the West side by a new three strand heavy barbed wire fence, with cedar posts which is the dividing line between property under consideration for sale and property belonging to Robert H. Cobb. Tract contains 23 acres, more or less." In 1971 Oliver and wife conveyed this land to defendants Workman by deed describing the western boundary in the same language quoted above, again using the quantity description, "Tract contains 23 acres, more or less."

In 1957 or 1958 Cobb, at that time owner of the entire north half of the quarter section, caused his hired hands to build a three

strand heavy barbed wire fence from point A on the following diagram, located on the north line of his property, through points B and D to point E, which was located on the south line of his property. At approximately the same time Cobb had his employees build a three strand heavy barbed wire fence along line B C D, completely enclosing the shaded area, which represents the 2.45 acre tract in controversy.

BECKER
(Plaintiffs-Respondents)

WORKMAN
(Defendants-Appellants)

"23 Acres, More or Less" according to the Cobb-Oliver and Oliver-Workman deeds

19.68 Acres, according to the Hurtgen Survey

2.45 A.

The descriptive language presents no ambiguity on the face of the deed but when one attempts to apply or fit the language to the subject matter on the ground for the purpose of identifying the western boundary an ambiguity or duplexity in meaning at once raises a doubt whether the western boundary described in the Cobb-Oliver and Oliver-Workman deeds is meant to be the line of barbed wire fence running from letter A through B, D and E, or is the line A B C D E. If the former, the 2.45 acre tract belongs to respondents Becker. If the latter, the 2.45 acre tract belongs to appellants Workman. "A latent ambiguity in the description of land in a deed or mortgage is an uncertainty not appearing on the face of the instrument, but which is shown to exist for the first time by matter outside the writing, when an attempt is made to apply the language to the ground. Such an ambiguity, it is practically agreed by all the cases, may be explained and removed by parol evidence; having been revealed by matter outside the instrument, it may be removed in the same manner." 68 A.L.R. Anno. p. 5, quoted with approval in *Meinhardt v. White*, 341 Mo. 446, 107 S.W.2d 1061, 1064[4] (1937). And see *Walters v. Tucker*, 281 S.W.2d 843, 847[1] (Mo. 1955). The question, then, is one of the intention of the parties to the 1961 Cobb-Oliver deed. (The intention of the parties to the Oliver-Workman deed in 1971 with respect to the courses and directions of the western boundary is immaterial, for obviously, regardless of intention, the Olivers could not convey to the Workmans more land than they acquired from Cobb.)

Considering the parol and extrinsic evidence tending to resolve the latent ambiguity and leading to discovery of the true intention of the parties to the Cobb-Oliver deed we conclude that they meant the western boundary to be the line A B D E and did not intend to include the 2.45 acre tract in the conveyance. We have the benefit of two surveys, made after the filing of this action. The Hurtgen Survey, on which we rely, shows that the tract originally conveyed to Oliver and later by the Olivers to the Workmans, excluding the 2.45 acre tract, contains 19.68 acres. We do not have the benefit of the testimony of Mr. Cobb, grantor in the 1961 deed, but the grantee, Mr. Oliver, testified and we attribute great weight to his testimony as bearing on the intention of the parties. At no time did Oliver ever claim that he owned the 2.45 acre tract. He did not consider that he had purchased that tract. He conceded that Cobb owned the 2.45 acre tract during the eight or ten years Oliver lived on the 19.68 acres. Referring to the lumber gate (located at the black mark just above letter D on diagram) Oliver testified that Cobb owned the property on the "other side" of that gate, obviously referring to property lying west of the gate. Both before and after Cobb executed the deed to Oliver in 1961 grantor Cobb claimed, farmed and used the 2.45 acre tract, and workmen hired by Cobb cut hay off it. William and Marvin Henry, brothers hired by Cobb during the period 1957–1963, verified Oliver's testimony that Oliver made no claim to the 2.45 acre tract. We accept the testimony that Cobb had control of the 2.45 acre tract and used it during those years; that the fence on the line B C D was put around the 2.45 acre tract to keep Cobb's cattle out of Cobb's alfalfa field; and that Oliver neither used nor made claim to the land lying west of the fence line B D. The gate referred to had a chain and lock. When Cobb made the deed to the Beckers in 1967 Cobb delivered a number of keys to Mr. Becker. Presumably one of the keys fitted the gate lock. Roy J. Becker claimed the 2.45 acre tract as his property and erected a "keep out"—"No Trespassing" sign near point C on the diagram, facing east.

On the law and evidence we reach the same result arrived at by the trial court, finding no merit in the reasons assigned by appellants why the circuit court erred in its findings.

Appellants rely heavily upon the fact that the deed recites that the land conveyed by Cobb to Oliver contains "23 acres, more or less." They argue that the 19.68 acres computed by the surveyor plus the 2.45 acres in question yields the figure 22.13 acres (only .87 acre less than the recital), and that if the Workmans do not get the 2.45 acres they will have received only 19.68 acres, which is 3.32 acres (14.44%) less than the amount stated in the deeds, and the Beckers will have acquired an additional 3.32 acres for which they did not bargain. Citing *Kite v. Pittman*, 278 S.W. 830 (Mo. App.1926), and *McGhee v. Bell*, 170 Mo. 121, 70 S.W. 493 (1902), they say the words "more or less" mean only a small excess or deficiency in proportion to the total amount named and that "more or less" would not cover a 14% discrepancy. We do not agree that the recital of the quantity of acres stated in the deed shows Cobb's intent to convey the 2.45 acre tract. The recital of the quantity of acres as 23 was evidently a guess. There had been no survey to establish the accuracy of that figure. Appellants' witness Dudley, a surveyor, conceded that "when people are foolish enough to write a deed by a barbed wire fence description" they are guessing at the acreage; that the recital of 23 acres was "just an estimate," since there was no survey; that it would not be unusual to guess 23 acres in the case of a 19.68 acre tract. Furthermore, metes and bounds in a description control a call for acreage. *Cantrell v. McDonald*, 412 S.W.2d 403, 408[4] (Mo.1967).

Appellants argue that since there was only one gate into and out of the 2.45 acre tract, and since that gate was on the east side adjoining the 19.68 acre tract "respondents would have to trespass on Appellants' property to enter the field by the gate." From this appellants conclude that "[s]urely if Cobb had intended to retain ownership of the field he would have reserved an easement to the field" when he conveyed to Oliver (as he did when he conveyed the tract east of the 19.68 acres to Spradling in 1960). This slight circumstance supports appellants' position but is of little importance in the whole picture, considering the other impelling evidence of intent not to include the 2.45 acre tract in the grant.

Appellants urge that the Beckers did not exercise rights of possession in or demonstrate acts of ownership over the 2.45 tract; did not open the locked gate; did not determine whether the keys fit the lock; made no use of the field, and made no objection when the Workmans used the field (by placing ponies in the field, without objection by the Beckers). Appellants concede that the Beckers objected to appellants' children and dogs coming onto their property west of the field, and that the Beckers erected the no-trespassing sign, but argue that if the Beckers believed they owned the 2.45 acre tract they would have erected the sign on the gate at the *eastern* edge rather than on the fence at the western tip of the 2.45 acres. We are not impressed with these contentions. Mr. Becker positively claimed purchase of 253 acres of land, a part of which was the land west of the line A B D E, and testified at length that appellants' vicious dogs prevented his use of that portion of his land. He said you are "not about to" put a no-trespassing sign at the gate on the east side of the 2.45 acre tract when there are ten or fifteen vicious, excited dogs surrounding you and your car. More to the point, while the matters urged by appellants would have been pertinent if the issue had been title vel non by adverse possession, neither side of this controversy claimed title on that theory. The issue tried was which of the two locations of the western boundary line was truly intended by the parties to the 1961 deed—the fence line A B D E or the fence line A B C D E? While the acts and understandings of the original grantor Cobb and original grantee Oliver properly bear on the question what

land was intended to be included in the grant, the acts, conduct and understandings of their alienees have no impelling effect upon that determination.

Finding no error on this review, and being of opinion that the case was correctly ruled by the circuit judge, the judgment is affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.